**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

| | |
|---|---|
| SS MANAGEMENT, LLC, | Case No. 3:25-CV-00555-CLB |
| Plaintiff, | **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** |
| v. | [ECF No. 9] |
| DOUGLAS COUNTY, *et al.,* | |
| Defendants. | |

Before the Court is Defendants Douglas County, Wesley Rice, Mark Gardner, Danny Tarkanian, Sharla Hales, and Nathan Tolbert's (collectively referred to as "Defendants") motion to dismiss Plaintiff SS Management, LLC's ("SS Management") complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 9.) SS Management responded, (ECF No. 18), and Defendants replied. (ECF No. 19). For the reasons stated below, Defendants' motion to dismiss, (ECF No. 9), is granted.

**I.    BACKGROUND**

SS Management is the owner of property in Douglas County categorized as "adult revue" that includes gaming establishments, showrooms, and areas open to public use. (ECF No. 1 at 3.) This case concerns an alleged regulatory taking based on Douglas County's enforcement of Ordinance No. 2024-1640, which requires "businesses categorized as 'adult revue' to obtain an unlimited gaming license and operate exclusively in designated showrooms or managed by gaming licenses," as well as for Douglas County's alleged failure to comply with NRS 237's Business Impact Statement ("BIS") requirements. (*Id.* at 3-4.) SS Management initiated this case on October 7, 2025 by filing a complaint asserting the following claims:

///

///

///

(1)   Regulatory Taking under *City of Las Vegas v. 180 Land Co., LLC*, 546 P.3d 1239 (Nev. 2024) and *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003 (1992) ("Claim 1")

(2)   Failure to provide Procedural Due Process under the Fourteenth Amendment ("Claim 2")

(3)   Violation of the Equal Protection Clause of the Fourteenth Amendment ("Claim 3")

(4)   Violation of the First Amendment ("Claim 4")

(5)   Violation of the Tahoe Regional Planning Agency Bi-State Compact ("Bi-State Compact") ("Claim 5")

(6)   Writ of Mandamus ("Claim 6")

(*Id.* at 5-9.) SS Management seeks monetary damages, declaratory relief, a writ of mandamus requiring Defendants to provide a BIS, and an order enjoining the enforcement of Ordinance No. 2024-1640. (*Id.* at 9-10.)

On January 30, 2026, Defendants filed a motion to dismiss for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 9.) Defendants argue the entirety of the complaint should be dismissed for failure to state a claim and that Defendants Wesley Rice, Mark Gardner, Danny Tarkanian, Sharla Hales, and Nathan Tolbert (collectively referred to as "Douglas County Commissioners") should be dismissed based on legislative immunity.[1] (*Id.*) Defendants further request the Court take judicial notice of certain facts in the public record, including minutes from meetings of the Douglas County Commission, the BIS prepared by Douglas County for Ordinance 2024-1640, and the Bi-State Compact. (ECF Nos. 9, 10, 11.)

SS Management responded, arguing the complaint should not be dismissed, the Douglas County Commissioners are not shielded by immunity, and the Court cannot accept extrinsic documents as proof of Defendants' statutory compliance. (ECF No. 18.) Defendants replied, reiterating the arguments made in the motion to dismiss. (ECF No. 19.)

---

[1]   As the complaint is dismissed in its entirety for the reasons stated below, the Court declines to analyze at this juncture whether the Douglas County Commissioners are entitled to legislative immunity.

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss on the grounds that a complaint "fail[s] to state a claim upon which relief can be granted." A complaint challenged "by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations" but requires plaintiff to provide actual grounds for relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Generally, a motion to dismiss pursuant to Rule 12(b)(6) tests the "legal sufficiency of the claim." *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). In assessing the sufficiency of a complaint, all well-pleaded factual allegations must be accepted as true, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and "view[ed] . . . in the light most favorable to the" nonmoving party. *Lemmon v. Snap, Inc.*, 995 F.3d 1085, 1087 (9th Cir. 2021).

The Ninth Circuit has found two principles apply when deciding whether a complaint states a claim pursuant to Rule 12(b)(6). First, to be entitled to the presumption of truth, the allegations in the complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Second, so that it is not unfair to require the defendant to be subjected to the expenses associated with discovery and continued litigation, the factual allegations of the complaint, which are taken as true, "must *plausibly* suggest an entitlement to relief." *Id.* (emphasis added). Dismissal is proper only where there is no cognizable legal theory or an "absence of sufficient facts alleged to support a cognizable legal theory." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 965 (9th Cir. 2018) (quoting *Navarro*, 250 F.3d at 732).

A court can grant a motion to dismiss for failure to state a claim with leave to amend. *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1113 (9th Cir. 2013). Courts should "freely give" leave to amend when there is no "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing

party by virtue of . . . the amendment, [or] futility of the amendment...." Fed. R. Civ. P. 15(a)(2). Usually, leave to amend is only denied when it is clear the deficiencies of the complaint cannot be cured by amendment. *See Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 956 (9th Cir. 2013). Whatever the reason, the court must provide an explanation for denying a party leave to amend. *Sharkey v. O'Neal*, 778 F.3d 767, 774 (9th Cir. 2015).

**III.    DISCUSSION**

Before addressing each claim, the Court will first discuss Defendants' request for judicial notice. (ECF Nos. 9, 10, 11.) Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)). However, Courts may consider matters outside the pleadings subject to the incorporation by reference doctrine or judicial notice under Federal Rule of Evidence 201. *See id.* Rule 201 permits a court to take judicial notice of an adjudicative fact if it is "not subject to reasonable dispute." *Id.* (quoting Fed. R. Evid. 201(b)). A fact is "not subject to reasonable dispute" if it is "generally known," or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Id.* (citing Fed. R. Evid. 201(b)(1)-(2)). Accordingly, "[a] court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment." *Id.* (quoting *Lee*, 250 F.3d at 689). But a court cannot take judicial notice of disputed facts contained in such public records. *Id.*

Thus, the Court takes judicial notice of when Ordinance 2024-1640 was adopted (November 7, 2024) and became effective (November 21, 2024).[2] *Daniels-Hall v. National Educ. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010) (finding it appropriate to take judicial notice of information "made publicly available by a government entities (the school

---

[2] *Douglas County, Municode*, https://library.municode.com/nv/douglas_county/ordinances/code_of_ordinances?nodeId=1329985 (last visited April 14, 2026).

districts)"). The Court also takes notice that a BIS was prepared for Ordinance 2024-1640.[3] *Id.* However, the sufficiency of the BIS under NRS Chapter 237 is disputed, and consequently the Court cannot take judicial notice of whether the BIS satisfies Defendants' statutory obligations. The Court further takes notice of the Bi-State Compact.[4]

With these judicially noticed facts in mind, the Court now addresses each claim in turn.

### A.    Regulatory Takings – Claim 1

SS Management first alleges a claim for a regulatory taking in violation of the Fifth and Fourteenth Amendment. (ECF No. 1 at 5.) "The Takings Clause of the Fifth Amendment states that 'private property [shall not] be taken for public use, without just compensation.' " *Knick v. Twp. of Scott, Pennsylvania*, 588 U.S. 180, 184 (alteration in original) (quoting U.S. Const. amend. V). "The Supreme Court has recognized two broad categories of takings: physical takings and regulatory takings." *Pakdel v. City & Cnty. of San Francisco*, 636 F. Supp. 3d 1065, 1071 (N.D. Cal. 2022) (citing *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 148-49 (2021)).

A claim for regulatory takings encompasses restrictions by a government on "a property owner's ability to use" her "own property." *Cedar Point*, 594 U.S. at 149 (citing *Tahoe-Sierra Pres. Council v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 321–23 (2002)). There are three types of regulatory takings: *Loretto, Lucas*, and *Penn Central* takings. *See Bridge Aina Le'a, LLC v. Land Use Comm'n*, 950 F.3d 610, 625 (9th Cir. 2020) (internal citations omitted). In this case, SS Management specifically alleges a *Lucas* claim. (ECF No. 1 at 5 ("The ordinance deprives Plaintiff of the economically beneficial use of its property, equivalent to a categorical taking under *Lucas v. South Carolina*

---

[3] *Meetings*, https://douglascountynv.granicus.com/ViewPublisher.php?view_id=1 (last visited April 14, 2026) (select the '2024' tab, click on 'Board of County Commissioners', scroll down to the October 17, 2024 meeting, and click on the link for 'Agenda Packet').

[4] *The Compact*, https://www.trpa.gov/wp-content/uploads/documents/archive/1/Bistate_Compact.pdf (last accessed April 14, 2026).

*Coastal Council*, 505 U.S. 1003 (1992).").) "The *Lucas* rule applies to regulations that completely deprive an owner of *all* economically beneficial us[e] of her property." *Bridge Aina*, 950 F.3d at 626 (citing *Lingle*, 544 U.S. at 539; *Lucas*, 505 U.S. at 1019) (internal quotation marks omitted) (emphasis in original).

In the complaint, SS Management alleges "[t]he ordinance limits Plaintiff's ability to lease its property and caps its highest and best use, undermining the economic viability of the property." (ECF No. 1 at 4.) SS Management also alleges that "[a]s a direct result of Defendants' actions, Plaintiff has incurred significant financial losses, including lost revenue, diminished property value, and operational disruptions[.]" (*Id.* at 5.) Thus, SS Management does not allege they have been deprived of *all* economically beneficial use of the property, which is insufficient to assert a *Lucas* takings claim. *See Tahoe-Sierra*, 535 U.S. at 330 ("Anything less than a 'complete elimination of value,' or a 'total loss,' ... would require the kind of analysis applied in *Penn Central*."). SS Management argues in response to the motion to dismiss that the complaint plausibly alleges a taking under the *Penn Central* test. (ECF No. 18 at 15-17.) However, as noted above, the complaint specifically alleges a claim for takings under *Lucas*.[5] (ECF No. 1 at 5.) Thus, as currently pled, the complaint does not allege a takings claim under *Penn Central*. Consequently, Claim 1 is dismissed without prejudice and with leave to amend, because the Court agrees that SS Management could plausibly amend its complaint to allege a claim for takings under *Penn Central*.

### B.   Procedural Due Process – Claim 2

In Claim 2, SS Management alleges Defendants deprived them of their procedural due process rights by failing to comply with NRS Chapter 237, which sets forth the requirement to prepare a BIS along with the process for objecting to a BIS. (ECF No. 1 at 6.) "The Fourteenth Amendment's Due Process Clause protects persons against

---

[5]   The complaint also references the Nevada Supreme Court case *City of Las Vegas v. 180 Land Co., LLC*, 546 P.3d 1239 (Nev. 2024), which concerned a *Lucas* style taking where a regulation deprived 180 Land Co. of all economic value of 35 acres of land.

deprivations of life, liberty, or property [without due process of law]; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). However, "[f]ederal due process does not necessarily entitle a plaintiff to the same procedures provided by state law." *Roybal v. Toppenish Sch. Dist.*, 871 F.3d 927, 933 (9th Cir. 2017) (distinguishing what process is due under federal law is "determined by context" and is analyzed under the three-part test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976)). Accordingly, when "the state-created protections reach beyond that guaranteed by federal law," the violation of procedure mandated by state law may not form a cause of action under § 1983. *Id.*; *see also Lovell*, 90 F.3d at 370 ("To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress.").

Therefore, to state a claim for violation of procedural due process under § 1983, a plaintiff must allege facts showing: "(1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Tutor-Saliba Corp. v. City of Hailey*, 452 F.3d 1055, 1061 (9th Cir. 2006) (citations omitted). "This is because the wrong is the deprivation of procedure *without due process;* the wrong occurs only if the state provides no remedy to redress a procedural violation." *Keller v. Los Osos Community Services Dist.*, 39 Fed. Appx. 581, 583 (9th Cir. 2002) (emphasis original) (citing *Zinermon,* 494 U.S. at 125-26). Ordinarily, due process of law requires an opportunity for "some kind of hearing" and opportunity to be heard prior to the deprivation of a significant property interest. *Mathews*, 424 U.S. at 333; *Memphis Light, Gas and Water Division v. Craft*, 436 U.S. 1, 19 (1978) (citations omitted).

Here, the allegations fall short of alleging a denial of adequate procedural protection for multiple reasons. First, the claim fails because SS Management does not explain how Defendants' alleged failure to comply with NRS Chapter 237 constitutes deprivation of its procedural due process rights guaranteed by the *Constitution*, rather than those procedural rights guaranteed by *state law*. *Tutor-Saliba Corp.*, 452 F.3d at

1061; *Roybal*, 871 F.3d at 933. SS Management specifically alleges "[b]y failing to conduct a meaningful BIS, Defendants deprived Plaintiff of the opportunity to challenge the economic impact of Ordinance No. 2024-1640 before its adoption, violating Plaintiff's right to notice and a meaningful opportunity to be heard." (ECF No. 1 at 6.) However, SS Management merely concludes Defendants' failure to comply with state procedural requirements deprived them of their due process rights, failing to explain *why*. Courts have found that procedural due process claims fail on this ground alone. *See, e.g.*, *Grant v. Corral*, Case No. 2:19-cv-01495-MCE-CKD (PS), 2021 WL 826203, at *10 (E.D. Cal. Mar. 4, 2021) ("As plaintiff has not elected to advance any argument on this point, beyond the allegations of his complaint, the court does not find this a sufficient basis for establishing a constitutionally inadequate process.").

Next, SS Management does not allege that challenging a BIS was the only way to raise concerns about the ordinance before the Douglas County Board of Commissioners. In fact, SS Management's response to the motion to dismiss reveals SS Management did receive notice of the intention to introduce Ordinance 2024-1640, that counsel "for affected business owners" submitted a formal written objection to the proposed ordinance, and counsel for SS Management "objected orally and in person during public comment at the July 18, 2024 [Board of Commissioners] meeting[.]" (ECF No. 18 at 8.) SS Management therefore acknowledges it was provided "some kind of hearing" and opportunity to be heard prior to the enactment of Ordinance 2024-1640. *Mathews*, 424 U.S. at 333.

Furthermore, even if the Court assumed that violating NRS Chapter 237 did constitute a proper procedural due process claim, the complaint does not sufficiently allege a violation of NRS Chapter 237. The complaint does not specifically allege how Defendants failed to comply with NRS Chapter 237, rather it merely concludes "Defendants failed to comply with NRS Chapter 237's requirements for conducting a proper [BIS] prior to adopting Ordinance No. 2024-1640." (ECF No. 1 at 5.) This is insufficient to give Defendants fair notice of the alleged violation. *Starr*, 652 F.3d at 1216

(the complaint "may not simply recite the elements of a cause of action but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.")

Additionally, the complaint acknowledges the existence of a BIS and the objection procedure under NRS 237.100 but does not allege SS Management was deprived of the opportunity to file an objection under NRS 237.100. (*See* ECF No. 1 at 6.) Based on the objection procedure in NRS 237.100, the state appears to have provided adequate procedural protection by creating redress for precisely this kind of alleged procedural violation. *Keller*, 39 Fed. Appx. at 583 (due process violation occurs "only if the state provides no remedy to redress a procedural violation."). Thus, SS Management has not properly alleged a claim for violation of procedural due process under § 1983 because the allegations do not demonstrate a denial of adequate procedural protections. *Tutor-Saliba Corp.*, 452 F.3d at 1061

Claim 2 is therefore dismissed without prejudice and with leave to amend, because SS Management could amend its complaint to add specific allegations showing why Defendants failure to comply with the procedural protections of NRS 237.100 deprived SS Management of its procedural due process rights.

### C.      Equal Protection – Claim 3

Before analyzing Claim 3, the Court must first clarify discrepancies between the contents of the third and fourth causes of action and their respective titles. The third cause of action, which is labeled as a claim for violation of the Equal Protection clause of the Fourteenth Amendment, also confusingly contains allegations that Defendants violated the First Amendment. The third cause of action states, in full:

37.   Plaintiff incorporates all preceding allegations as though fully set forth herein.

38.   Ordinance No. 2024-1640's requirement that only adult revues must be owned, managed, or controlled by the holder of an unlimited gaming license is a content-based regulation that discriminates against certain forms of protected speech in violation of the First Amendment.

39.   The ordinance unlawfully favors one group of speakers over others by allowing only certain individuals or entities to present adult revue performances,

constituting speaker discrimination.

40. Content-based restrictions are presumptively invalid under *Reed v. Town of Gilbert*, 576 U.S. 155 (2015), and fail strict scrutiny.

41. The ordinance further violates Plaintiff's Equal Protection rights by arbitrarily imposing restrictions on adult revues while exempting other types of theatrical presentations at protected "showrooms."

42. As a direct result of Defendants' actions, Plaintiff has incurred significant financial losses, including lost revenue, diminished property value, and operational disruptions, entitling Plaintiff to just compensation.

(ECF No. 1 at 6-7.) This claim therefore incorporates elements of Equal Protection claims and First Amendment claims. However, the fourth cause of action is labeled as a claim for violation of the First Amendment but contains no discussion whatsoever of that amendment. The fourth cause of action states, in full:

43. Plaintiff incorporates all preceding allegations as though fully set forth herein.

44. Article 6(j) of the Bi-State Compact establishes legal standing for any aggrieved person to file an action alleging violations of the Compact or agency regulations.

45. Plaintiff qualifies as an aggrieved person under the Compact, as it owns property directly affected by the challenged ordinance and has actively participated in administrative proceedings.

46. Legal actions arising under the Compact may be brought in state or federal courts of competent jurisdiction, with venue proper in the judicial district where the real property is situated.

47. As a direct result of Defendants' actions, Plaintiff has incurred significant financial losses, including lost revenue, diminished property value, and operational disruptions, entitling Plaintiff to just compensation.

(*Id.* at 7.) This claim clearly concerns the Bi-State compact. Thus, the Court will examine the third cause of action as alleging claims under the Equal Protection Clause (Claim 3) and First Amendment (Claim 4). The Court will analyze the fourth cause of action together with the fifth as Claim 5, as they both concern alleged violations of the Bi-State Compact.

The Court now turns to Claim 3. "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432,

439 (1985) (citing *Plyler v. Doe,* 457 U.S. 202, 216 (1982)). "To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Barren v. Harrington,* 152 F.3d 1193, 1194 (9th Cir.1998), *cert. denied,* 525 U.S. 1154 (1999). The United States Supreme Court has also recognized "successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *see also SeaRiver Maritime Fin. Holdings, Inc. v. Mineta*, 309 F.3d 662, 679 (9th Cir. 2002).

As outlined above, the allegations concerning the Equal Protection clause are very brief and are intertwined with allegations concerning the First Amendment. In the complaint, SS Management does not allege it is a member of a protected class. SS Management does allege other entities with unlimited gambling licenses, as opposed to SS Management's unrestricted license, are not affected by Ordinance 2024-1640. (ECF No. 1 at 4.) However, SS Management does not actually allege there was no rational basis for such distinction, which is required for a class of one claim. (*See id.*) Furthermore, although SS Management alleges those other entities operate large casinos, as SS Management does, the allegation that the other entities possess a different gambling license indicates they are not "similarly situated." *Village of Willowbrook*, 528 U.S. at 564.

Consequently, the Court finds the complaint does not contain allegations sufficient to support a claim that Defendants violated the Equal Protection clause, and Defendants' motion to dismiss as to the Equal Protection claim is granted. The Equal Protection claim is therefore dismissed without prejudice and with leave to amend to permit SS Management opportunity to attempt to cure these deficiencies.

**D.     First Amendment – Claim 4**

The Court will now turn to the First Amendment claim, which is also predicated on facts contained in the third cause of action. SS Management alleges "Ordinance No.

2024-1640's requirement that only adult revues must be owned, managed, or controlled by the holder of an unlimited gaming license is a content-based regulation that discriminates against certain forms of protected speech in violation of the First Amendment." (ECF No. 1 at 6.) SS Management then alleges the ordinance unlawfully favors one group of speakers over another by allowing only certain groups to operate adult revues. (*Id.*)

In the First Amendment context, "purely expressive activit[ies]" are a form of "speech" and are "entitled to full First Amendment protection." *Anderson v. City of Hermosa Beach*, 621 F.3d 1051, 1059 (9th Cir. 2010). "[T]he Supreme Court. . . ha[s] recognized various forms of entertainment and visual expression as purely expressive activities, including. . . topless dancing. . ." *Id. a*t 1060. Content-based laws that target speech based on its communicative content are "are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015); *see United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 813 (2000) (holding "a content-based speech restriction ... can stand only if it satisfies strict scrutiny"). Discrimination based on viewpoint is "an egregious form of content discrimination." *Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995). "[L]aws favoring some speakers over others demand strict scrutiny when the legislature's speaker preference reflects a content preference." *Turner Broadcasting System, Inc. v. FCC,* 512 U.S. 622, 658 (1994); *see Sorrell v. IMS Health Inc.*, 564 U.S. 552, 565 (2011) (applying strict scrutiny to content-and speaker-based restriction).

In the complaint, SS Management does not allege Ordinance 2024-1640 was enacted because Defendants prefer those entities who hold unlimited gambling licenses over SS Management or entities holding unrestricted licenses. (*See* ECF No. 1.) SS Management does not make any allegations whatsoever as to the intent of Defendants, rather only concluding the ordinance "unlawfully favors one group of speakers." (*Id.* at 6.) However, as noted above, all speaker-partial laws are not presumed invalid, it is only

"when they reflect the government's preference for the substance of what the favored speakers have to say (or aversion to what the disfavored speakers have to say)." *Turner*, 512 U.S. at 658. Thus, based on the allegations in the complaint, Ordinance 2024-1640 is not subject to strict scrutiny. The ordinance is therefore valid if it bears a rational relation to a legitimate governmental purpose. *Regan v. Taxation With Representation of Washington*, 461 U.S. 540, 547 (1983). In relation to the First Amendment claim, SS Management does not allege the ordinance is not rationally related to a legitimate governmental purpose. (*See* ECF No. 1.) Consequently, SS Management has failed to sufficiently plead a claim violation of the First Amendment based on the enactment of Ordinance 2024-1640.

The Court therefore grants Defendants motion to dismiss as to SS Management's First Amendment claim with leave to amend because SS Management could amend its complaint to allege facts sufficient to state a claim.

### E.   Violation of Bi-State Compact – Claim 5

Next, Defendants argue SS Management's claims under the Bi-State Compact should be dismissed because they are untimely and fail as a matter of law. (ECF No. 9 at 10-12.) The Court will first address the timeliness of SS Management's complaint.

Both parties acknowledge the deadline to file actions alleging a violation of the Bi-State compact is 65 days after discovery of the cause of action. (ECF No. 9 at 10, ECF No. 18 at 10.) The Court has taken judicial notice that Ordinance 2024-1640 was adopted on November 7, 2024, and became effective on November 21, 2024. (ECF No. 9 at 10-11, ECF No. 18 at 8.) Thus, legal action alleging violations of the Bi-State compact based on Ordinance 2024-1640 were due on or before January 25, 2025. However, the complaint in this case, Case No. 3:25-cv-00555-CLB ("*Case 3*") was not filed until October 7, 2025. (ECF No. 1.)

SS Management first argues that its claims under the Bi-State compact are not untimely because the complaint relates back to a previous complaint filed before the deadline ran. (ECF No. 18 at 8-10.) That case, No. 3:25-cv-00010 ("*Case 1*"), was filed

by attorney Jordan Laub ("Laub") on January 14, 2025, and was apparently initiated without filing any initial pleadings. *See Case 1.* Laub filed only a certificate of interested parties on behalf of SS Management on January 16, 2025. *Case 1* at ECF No. 1. Although SS Management states that a complaint was filed on January 6, 2025, the case was not open on that date and therefore that could not be possible. Based on the failure to provide accurate contact information and any initial pleadings, *Case 1* was eventually closed on January 29, 2025, because "Counsel has failed to properly file his initial case opening documents. Counsel may initiate a new case by properly filing his opening documents and paying his filing fee correctly in the new case opening." *Case 1*, ECF No. 2.

On January 30, 2025, Laub initiated a second case, Case No. 3:25-cv-00062-MMD-CLB ("*Case 2*"), and did file initial pleadings. The complaint in *Case 2* is labeled with the case number for *Case 1*. *Case 2*, ECF No. 1. On June 27, 2025, three attorneys with Greenberg Traurig, LLP, Eric V. Rowen, Scott D. Bertzyk and Elliot T. Anderson, filed a notice of appearance as counsel of record for Plaintiff. *Case 2*, ECF No. 29. That same day, Anderson filed a notice of voluntary dismissal without prejudice under Federal Rule of Civil Procedure 41(a)(1). *Case 2*, ECF No. 30. Under Rule 41(a)(1), a plaintiff "has an absolute right to dismiss" an action and the "dismissal is effective on filing and no court order is required." *Com. Space Mgmt. Co., Inc. v. Boeing Co., Inc.*, 193 F3d 1074, 1078 (9th Cir. 1999) (quoting *Wilson v. City of San Jose*, 111 F.3d 688, 692 (9th Cir.1997)). Consequently, the case was automatically closed without a court order.

Laub then filed a motion for reconsideration and to strike the notice of dismissal, arguing the attorneys for Greenberg Traurig did not have authority to file the notice of dismissal and failed to properly substitute counsel per the Court's Local Rules. *Case 2*, ECF No. 32. The Court denied the motion on September 12, 2025, finding the Greenberg Traurig attorneys did not seek to substitute themselves for Laub as counsel of record and therefore validly filed notices of appearance in the case. (*Case 2*, ECF No. 41.) The Court further noted the "dispute as to whether counsel indeed has authority to act on behalf of the client, as is the issue raised in the Motion, may need to be resolved between the

parties, but that dispute does not affect the Court's reliance on the notice of appearance, and then the Notice of Dismissal, to close the case." (*Id.*)

Assuming for the sake of argument that a complaint was filed in *Case 1* on January 14, 2025, the date *Case 1* was opened, SS Management pursued legal action under the Bi-State compact on day 54 of the 65-day window. Again, assuming for the sake of argument that the deadline was tolled until September 12, 2025, the date the Court denied SS Management's motion for reconsideration and to strike the notice of dismissal in *Case 2*, SS Management would have had another 11 days, or until September 23, 2025, to file the case within the deadline. However, *Case 3* was not initiated until October 7, 2025. Therefore, the deadline under the Bi-State compact ran before the complaint was filed in this case, *Case 3*.

SS Management next argues that if the complaint is technically untimely, they are entitled to equitable tolling of the deadline such that the initiation of *Case 3* on October 7, 2025, was not untimely. (ECF No. 18 at 8-10.) As it applies to equitable tolling, the Supreme Court has been clear one such rule that limits a court's equitable powers is that "a litigant is entitled to equitable tolling of a statute of limitations only if the litigant establishes two elements: '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 256 (2016) (quoting *Holland v. Florida*, 560 U.S. 631, 639 (2010)). Both elements must be met for a litigant to be entitled to equitable tolling. *Id.* (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005) (holding, without resolving litigant's argument that he had "satisfied the extraordinary circumstance test," that, "[e]ven if we were to accept [his argument], he would not be entitled to relief because he has not established the requisite diligence")).

The diligence required for equitable tolling purposes is "reasonable diligence," not "maximum feasible diligence." *Holland*, 560 U.S. at 653 (citing *Lonchar v. Thomas*, 517 U.S. 314, 323 (1996); *Starns v. Andrews,* 524 F.3d 612, 618 (5th Cir. 2008)). The Supreme Court has held "garden variety claim[s] of excusable neglect," such as a simple

miscalculation that leads a lawyer to miss a filing deadline, does not warrant equitable tolling. *Holland*, 560 U.S. at 651-52 (quoting *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 96 (1990); citing *Lawrence v. Florida*, 549 U.S. 327, 336 (2007)).

The Supreme Court's decision in *Holland* is instructive in analyzing SS Management's argument that equitable tolling applies. In *Holland*, the Supreme Court found the plaintiff demonstrated reasonable diligence because he:

> wrote his attorney numerous letters seeking crucial information and providing direction; he also repeatedly contacted the state courts, their clerks, and the Florida State Bar Association in an effort to have [his attorney]—the central impediment to the pursuit of his legal remedy—removed from his case. And, the *very day* that Holland discovered that his AEDPA clock had expired due to [his attorney's] failings, Holland prepared his own habeas petition *pro se* and promptly filed it with the District Court.

560 U.S. at 653 (emphasis original).

The allegedly "improper voluntary dismissal" was entered in *Case 2* on June 27, 2025, and the complaint *Case 3* was filed on October 7, 2025. (ECF No. 1.) Thus, unlike the plaintiff in *Holland*, SS Management waited over 100 days to file the complaint in *Case 3*. Even if the Court considered the unsuccessful motions to reconsider and strike the notice of dismissal in calculating the timeframes at issue, SS Management waited 25 days between the order denying the motion on September 12, 2025 in *Case 2*, and filing the complaint in *Case 3*. The Court takes judicial notice that the complaint is almost identical to the previous complaint, therefore it does not appear that the period between resolution of *Case 2* and filing *Case 3* was spent re-drafting or substantially altering the complaint. *Compare Case 2*, ECF No. 1, *with Case 3*, ECF No. 1. Furthermore, unlike the *pro se* inmate plaintiff in *Holland*, the representative for SS Management, Laub, is an attorney himself. *See Case 2*, ECF No. 32 at 6 (motion filed and signed by Laub stating "SS Management, LLC is a Nevada limited liability company with a multi-member structure. Jordan K. Laub is the managing member and principal responsible for this litigation."). Therefore, the Court finds SS Management was not reasonably diligent.

In addition, the Court finds SS Management fails to establish extraordinary circumstances were present to support equitable tolling. *Menominee*, 577 U.S. at 256.

16

The dismissal of *Case 1* clearly does not rise above the level of "garden variety claim[s] of excusable neglect" because the conduct consists of an attorney failing to comply with the administrative tasks of filing a complaint to properly initiate an action with this Court. *Holland*, 560 U.S. at 651-52. Neither does the apparent conflict over who had authority to file a notice of voluntary dismissal in *Case 2.* Consequently, the Court finds SS Management is not entitled to equitable tolling and therefore the portions of the complaint raising claims under the Bi-State compact are dismissed with prejudice, because SS Management cannot cure this deficiency through amendment and thus amendment would be futile.

### F.      Writ of Mandamus – Claim 6

In its final claim, SS Management alleges they are entitled to a writ of mandamus ordering Defendants to rescind Ordinance 2024-1640 due to their failures to comply with the procedural mandates of Nevada law or enjoin enforcement until compliance with NRS Chapter 237 is achieved. (ECF No. 1 at 8-9.) Defendants argue SS Management is not entitled to writ of mandamus relief because there is no legal or factual basis for the requested relief because a BIS was prepared. (ECF No. 9 at 12.) SS Management does not include any argument as to its claim for writ of mandamus in its response to the motion to dismiss. (*See* ECF No. 18.)

The federal mandamus statute invests district courts with "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. "The writ of mandamus is a 'drastic and extraordinary' remedy [that is] 'reserved for really extraordinary causes.'" *In re Van Dusen*, 654 F.3d 838, 840 (9th Cir. 2011) (quoting *Ex parte Fahey*, 332 U.S. 258, 259-60 (1947)). Because they are extraordinary remedies, mandamus writs "are appropriate only when a federal officer, employee, or agency owes a nondiscretionary duty to the plaintiff that is 'so plainly prescribed as to be free from doubt.' " *Stang v. I.R.S.*, 788 F.2d 564, 565 (9th Cir. 1986) (quoting *Pescosolido v. Block*, 765 F.2d 827, 829 (9th Cir. 1985)). Thus, mandamus may be granted only when the

17

petitioner demonstrates (1) it's right to that relief is "clear and certain[,]" (2) the agency or officer's "duty is 'ministerial and so plainly prescribed as to be free from doubt[,]' " "and (3) no other adequate remedy is available." *Or. Nat. Res. Council v. Harrell*, 52 F.3d 1499, 1508 (9th Cir. 1995) (quoting *Fallini v. Hodel*, 783 F.2d 1343, 1345 (9th Cir. 1986)). And "[t]he extraordinary remedy of mandamus lies within the discretion of the trial court, even if the three elements are satisfied." *Id.* (citing *Fallini*, 783 F.2d at 1345).

Here, the Court takes judicial notice of the fact that a BIS was prepared for Ordinance 2024-1640. However, it is not clear whether the BIS complied with NRS Chapter 237. Thus, the Court cannot find Defendants had a nondiscretionary duty to SS Management that is "so plainly described as to be free from doubt." *Stang*, 788 F.2d at 565. Rather, it is clearly disputed whether Defendants properly performed their duties. Additionally, the duty SS Management claims Defendants failed to perform was clearly not "ministerial." *Or. Nat. Res. Council*, 52 F.3d at 1508.

Thus, SS Management is not entitled to the extraordinary remedy of a writ of mandamus and this claim is dismissed with prejudice, because SS Management could not amend its complaint to show they are undoubtedly entitled to relief and Defendants' duty was not ministerial. *In re Van Dusen*, 654 F.3d at 840.

///
///
///
///
///
///
///
///
///
///
///

18

## IV.   CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' motion to dismiss, (ECF No. 9), is **GRANTED**.

**IT IS FURTHER ORDERED** that the complaint, (ECF No. 1), is dismissed as follows:

- Claims 1, 2, 3, and 4 are **DISMISSED WITHOUT PREJUDICE** and **WITH LEAVE TO AMEND**;
- Claims 5 and 6 are **DISMISSED WITH PREJUDICE** and **WITHOUT LEAVE TO AMEND**.

**IT IS FURTHER ORDERED** that an amended complaint is due on or before **May 22, 2026**.

**DATED**: April 22, 2026.

_____
**UNITED STATES MAGISTRATE JUDGE**